Good morning, Your Honor. My name is Tom Kaufman. I'm representing Manheim in this case. I'd like to elucidate your Honor's question. Before I jump into addressing your specific question, which I do agree is the crux of it, I think we need to step back a little bit. Look at CAF and look at how these studies of wage-hour class actions actually work. I've been doing wage-hour class actions for less than a year. When these cases are filed, let's just take a simple example of a meal-period case. The allegation from the client is there is some kind of policy or practice that, as a class-wide basis, involves an improper providing of meal-periods. It could be that people are too interrupted, so therefore none of the meal-periods qualify as really off-meeting. It could be that they cause people to take meal-periods after five hours. It could be a variety of things. And there's no way, unless the plaintiff has voluntarily disclosed it, to get the information out of them to figure out exactly if it's $5 million worth, possibly until after class certification. But the defense knows that. Well, you know some of it because you'll know how many people have worked more than five hours. You'll know whether there is, in fact, a policy of never doing this on Friday because you want people to work harder on Friday. The actual answer to the question of liability, at least, and maybe not on the Mount of Controversy, but certainly on liability, lies within the knowledge of the company. I agree with part one. Do you know whether everyone takes a rest period or a meal break? Well, we know, based on records, when people clocked out, we used that. That's exactly what we used here to say that it was just our meal and rest periods, it was at least $12 million. What we don't know, though. Because you had a 100% participation rate in that. Well, we used, the plaintiffs allege, every single employee in California who's not exempt is in this class. And they said there's a pattern in practice that results in systematic denial of guilt. Okay, that doesn't mean 100% of the time. It doesn't mean 100%. But if you, as the court, are looking at the evidence and trying to interpret it in a way, I think that one interpretation is possible. You, plaintiff, chose to come in here and plead an extremely broad allegation. I would point you out on a CD. It's not on a paper. It's in a case from the Ninth Circuit, 707 F. 3rd, 1136. It was dealt with a somewhat different issue in CAFA, but I love this quote. It says, CAFA forces plaintiffs to assume costs associated with their own independence. Yeah, there's a problem that you have to face here, I think, because you're talking about what the plaintiff's burden is. But it is, I'm going to ask you the same question I asked in the previous case. Do you agree with the proposition that when a defendant removes to federal court, it is the defendant that must demonstrate the existence of federal jurisdiction? We agree. Okay. And that the standard for doing so is preponderance of the evidence, not preponderance of the pleadings, correct? I also agree with that. Okay. So that takes us where we need to go, which is how do we know, how can we determine a standard for seeing what is evidence of an amount of controversy? I think the answer is that the defendant has to do what he did in this case. If you say all non-exempt employees in California are subject to an indeterminate practice that leads to class-wide denial of income, not limited to jobs, events, facts, anything, then the defendant meets that burden by counting up the number of employees who are non-exempt in the class, the number of shifts that they worked at night, trigger, liability. I mean, if they can do that, it's, now, I agree there's closed cases. If you have an off-the-clock case and the defendant says, I'm assuming it's two hours of off-the-clock every day, that might be a stretch because that's just a clause. But the counsel, they didn't actually ever allege, at least as I read it, that every member of the class was in the situation of not getting a meal and rest break. They didn't say the limitations either way, Your Honor. But it's up to you to tell us by a preponderance of the evidence what is actually in controversy in the case. Let's say that their allegation is that they were left with no food and therefore all of the meals are invalid because none of them were laid off. Okay, that's a hypothetical. They didn't say that. I dispute that. I dispute that. Wait, stop. I'm sorry. I don't mean to be rude. I'm not saying stop because of your answer, sir. I just, we've lost Judge Gould again. You see how good my reaction times are. That's what we're testing. Hello. I'm sorry about that. The systems are creating a problem. Okay. Mr. Kaufman, you were in the middle of your answer. I was wrongfully terminated and I suffered a lot of self-injury. I, as a defendant, can commonly in those cases be removed. You don't know if a person is emotionally distressed or not. You don't know what the possible punitive damages would be. A lot of these cases, there's not enough economic damages, so you can see the $75,000.  and the courts have no problem with that. Okay. Look, this is an employment case. Emotional distress. There's sometimes a lot of numbers. They don't have any actual facts, but they think a reasonable construction in these cases would be fine if we met the requirements of the evidence standard. I think what you're honoring is important. I mean, I know you have the best of intentions here when you're using the statute and saying requirements of the evidence, but if the standard is the defendant has some obligation to count up what the possible violations are that are actual violations, every plaintiff will come in, very easily, leave vaguely, I can't bring a motion to dismiss in front of the court because the judge will say, I don't think this case should be considered. Counsel, to school, let me interject a question there because obviously the defendants, to show a mountain controversy, not proving the damage they've caused, they're just trying to show what their exposure is, right? So, but now, what's wrong with saying that in doing that, that a defendant should show some evidence that shows the assumptions they're making are reasonable? And the problem I'm having is the same one, I know excessive force may be distinguishable, but a pattern of practice doesn't mean always.  The problem with that, Your Honor, is that creates an unfortunate and impossible standard for me because how am I going to show it's 20%? How am I going to show it's 10%? Well, see, I think 10% or 20% is more guessing than 100%. I mean, because 100%, if you do 100%, now a judge could look at that and say, I do not think you've met your burden or it's not reasonable or plausible that, you know, in that situation. But they could also say it is, depending on the circumstances of the case. So 100% might be an okay way to do it sometime. It might not be an okay way to do it another time, depending on the pleadings. Well, 100% couldn't be right every time. If they didn't plead a practice or if it wasn't saying they. I would say, in a case like this, where the plaintiff says almost nothing, leaves a class that is all non-exemptive for you, and makes allegations that somehow, everybody from the mechanics to the engineers to the people driving cars somewhere, they totally just work jobs, are all part of a class, and there's a systematic pattern somehow of them being able to have a class action and denial of moral respite. I think that it is a fair and reasonable interpretation to report looking at that and say, plaintiff, you pleaded it this way, we are going to interpret it fairly. And in that case, you are limited. What does disparate have to do with it? That sounds like class de-dissertification or subclasses. I'm not sure what that has to do with figuring out how much is at stake. It indicates that there's some practice that affects everybody. That it just creates an interest. There's something that's positive. All the meal turns to be a badge. It doesn't say that, though. I mean, that's the problem that I'm having. And I don't think that, in good faith, a plaintiff could even allege that it happens all the time. I mean, the plaintiff has to plead in good faith on the facts they know. And I don't know of an employer that never allows rest breaks or never pays overtime or does, you know, that just is the rarest of cases. There's been probably 50 ways to go in class action mediation, and I can tell you the first thing I would get in a mediation is a demand for 100% of every shift that's possible. Sure, and you say it's zero, and then you negotiate, and then that's life. I've done it, though. That's, you know, in controversy. That's what they ask for. Let's say you did 100% and your numbers came up $5 million and $1. Would that be different than when it comes up $12 million and 100%? I do kind of remember it, yeah. It's not the judge's job. It's your job to come on. You're putting it always over on someone else in your analysis. It's your job to show by a preponderance of the evidence, whatever that means. And so you didn't choose to put in evidence about these other things. You chose, for whatever reason, to rise or fall, for now, on this question of the meal and rest breaks. So isn't that all that we get to look at? What other evidence is there? There's evidence of the number of people in the class, the number of shifts, the number of – if the judge wanted to extrapolate and say, okay, well, there's a 20% violation rate, that would be to a 20%… What would happen with a sampling or an expert or some of the things that we've seen in other cases? I understand you're saying sampling, but sampling is what? We don't know what the validations are, and we won't know until… You just said you did know that they mean everybody. I'm saying if they – going back to Clark's answer – if the plaintiffs choose to plead extremely broadly in favor of you, they are foisted on their own for tolerance for lack of a better word. But here, it's not close. If the court found a 30% violation rate, that would have been enough. But why – if you're not going to – if you say 100% isn't enough for a mountain of controversy, it's got to be something else. There's no other workable standard. It's not just another example of guesswork or lying. Well, there is if you look at your actual practices and figure out what is a reasonable estimate of what has actually happened. Our practice – we believe our practice doesn't provide a reasonable estimate. We have evidence. People took meal periods. We have evidence that there is a… Every single person took a meal period, every single period according to time records. But a standard by the California Supreme Court, that's not even the right question. Did we give people a reasonable opportunity to take a meal period? And I don't know, and I'm not going to know until after class cert, possibly, if there's a… Then bring the motion in. After class certification, I'm not afraid of all kinds of horrible procedural issues. You can decertify the class and start all over again. That can't be what the Congress decided. In the past cap, they had something specific in mind. Taking these class actions out of state court into federal court. Big ones, right. And so you don't always know. But they didn't go on numbers alone. They could have. They could have stopped there and not required an amount of controversy or not required more than the $75,000 or whatever it is these days. You're right. I agree with you. But the point is, the standards you are suggesting, I can't think of how I could possibly… I haven't suggested one. I've been struggling. How does preponderance of the evidence work in with the words that we see I think the preponderance of the evidence, reasonable and plausible, that if you look at the facts of the case, the nature of the claim, if the defendant is making propositions that are, in this case, the example I gave, it's an off-the-clock case. There's 150 people. If it works 10 minutes off-the-clock, it would be a $600,000 case. And the defendant said, to get to $5 million, I'm assuming it was six hours of off-the-clock work. So that would not be reasonable or plausible, and therefore you would not have met your burden under preponderance of the evidence. So it's a judgment call every time because that's 100% of the people, but you concede that six hours would be unreasonable as a guess. Okay. There's no self-hypothesis or inconsistent assumption that people would do that. There's commonly meal-period claims that people see 100%. I cited in our paper, food meal versus dollar stores. They claim that none of the rest periods were proper because people were not authorized to leave, and there was a 100% rest period case. You can have, you're not going to get the specific limitations, and so at some point, possibly after certification, there's going to be some expert report to the plaintiff that's supposed to count up, that's supposed to compile the amount of shifts where they found some kind of violation. I'm not going to have any way to get that to you, and by that point, three years into the case, and possibly certified, and I cannot believe the rule could possibly be that therefore we remove them, we go back to federal court, and we start the trial. No, either that or you make do with state court, which isn't a terrible place. Well, according to you and me perhaps, not according to the statute, Oh, I understand. Yeah, I think most of us served on some of those other courts before, so we used a lot of your time with questions, so we will restore a couple of minutes for your rebuttal time. Okay. May it please the court. Good morning. My name is Raul Cadena of Cadena Churchill, and I'm here on behalf of the plaintiff and appellee, Jose Ibarra. Appellants present the issue of whether the district court erred in finding that the defendant did not establish, by the preponderance of evidence, that $5 million is in controversy in this case. The resounding answer is no. The court got it right. It's not that you're going to ask for more than $5 million, though, right? We don't know. You're just saying they didn't meet their burden. That's correct, Your Honor. If I follow this, when you ask for more than $5 million, then it's their burden. I understand that, but I don't understand why it can't be, the standard cannot be what people have to do at trial. And the standard cannot be that you have to wait three years to determine what your exposure is.  I don't understand why they can't assess what their potential risk factor is when you say pattern and practice and unwritten policy mandating denial of meal and rest breaks. And it comes up to $12 million, which is not close to $5 million. I said $5 million and one dollar would be a little bit of a different story. I don't understand how, with what you're saying they have to do, that anyone could ever remove. And we know under CAFA, I don't, you know, CAFA, the whole purpose of CAFA is they don't want plaintiffs foreign shopping. They want some standardization, and they think for whatever reason the federal courts are fairer than the state courts, but, you know, I think that, but if there is a strong presumption under CAFA that it should be viewed expansively as opposed to removal, say, possibly under just straight diversity as far as that goes. So I don't know what you're arguing. When would someone ever meet that burden? Your Honor, first of all, I agree with the district court judge that pattern and practice does not mean always. It does not mean a hundred percent violation rate. That becomes the standard every single application. If you plead it like that, if you plead it like that and let's say they had just done all the people and then they said, let's just assume 50%, then that's $6 million here, right? Assuming 50% seems to be, I don't see any basis for doing that. I see, based on your pleading, it's more, it's less assumption to go with a hundred percent and let the court look at it from that perspective. Your Honor, unfortunately, they're sort of damned if they do and damned if they don't. Well, that's conjecture, that's speculation, that's stargazing. The court has. What should they have done? What could they do based, when you say pattern or practice, what should they have produced to meet this burden? Well, let me propose something, which I actually proposed to counsel before the district court, which is engaging in jurisdictional discovery. That's an option. And if the court recalls from the previous oral argument, they had actually undertaken a sampling. And so a sampling could certainly flesh out a more precise violation rate, as counsel stated, that they evidently did look at these payroll records and determined that some people did take rates and some didn't. We don't have that information before us. We have mere speculation and conjecture that it's 100%. And quite frankly, they have the information. They've had it for three years now. So when counsel talks about having to figure this out in three years, here we are three years later. So if they gave you that sampling and it said over $5 million, then you would concede it right there? I would if that is what the information. Just as in the previous case. Pardon me? As in the previous argued case. That's exactly what happened. We don't have that information. And the issue is that when you talk about summary judgment evidence, how can it be the case that they can produce summary judgment evidence that we've had no opportunity to look at, to cross-examine, to look at the declarant? Well, there's no requirement under this statute that there have to be depositions and that discovery has to have taken place. Summary judgment, but what I'm saying, but I know of no case that says you're entitled to have discovery before they can make a motion to remove under CAFA, that that's necessarily fatal. Is there anything to that extent? Well, I think that if we're talking about a summary judgment standard, which is tremendously high and typically happens after discovery. It doesn't say a summary judgment standard. It says summary judgment type evidence. I was wondering if you're arguing that jurisdictional discovery is mandatory or you were just saying that's an option if they feel that's a potential avenue if there isn't sufficient evidence produced otherwise. That is a potential avenue. I have a concern. I'm sorry, Judge, go ahead. Well, I had two questions. I'll try to keep them quick. First of all, I think if I recall correctly in your complaint, you alleged the damages were less than $5 million. Yes, Your Honor. But given standard fire, that seems that that can't control and the defendants have to have an opportunity to submit evidence and remove a case if they think the damages exceed $5 million, right? So long as they meet the burden of proof, Your Honor, which they haven't. Which is preponderance of the evidence, okay. Yes, Your Honor. Well, now, one, you know, it could be, I'm not saying this is the way it is, but, you know, you could have a case where one judge wanted to affirm, one judge wanted to reverse, and one judge wanted to have a question mark and wanted to vacate and remand. So I don't want to sound like a broken record from the earlier argument, but let me just ask you this question. If we were to vacate the district court's order here and remand it for more proceedings, what would be the types of proceedings that necessarily would follow or could follow? I think the proceedings would have to entail discovery, Your Honor, because here we are three years later without any knowledge, information, awareness, discovery as to the alleged 100% violation rate to support the 100% violation rate. And so I think that if the court did that, it would involve jurisdictional discovery. I have a concern that is not about this particular district judge, but it is a generic overarching concern having seen quite a few of these cases. And I wonder whether there is a tendency on the part of district courts generally to try to push these cases back to state court because they don't want these cases about state region hour and various other kinds of claims. And I don't know what to do with that concern. Maybe it's irrelevant because each case is its own record and its own thing. But I wonder if you have any sense of whether that is a problem, and if so, what, if anything, our court ought to do about that as we look at these cases. I don't get that sense, Your Honor. And I look at cases like the Michaels case where in that pleading, for example, the allegation was asked to a misclassification claim where the managers worked on average 45 to 50 hours. It was very easy to come up with a calculation there because the evidence supported that there was an overtime amount of anything over 40. So that was very easy to figure out. There are complaints where the plaintiff may allege that everybody is due E-208 penalties, which allow up to 30 days, and if the allegation is that everybody is due E-203 up to 30 days or 30 days for everyone, that's another way that the district court can analyze the evidence. And so there are cases where the district court says, based on the evidence, this case meets the amount in controversy. But I don't see it as a problem where there's a tendency to send cases back to state court. In fact, I think that with the elimination of the legal certainty standard, more cases will actually stay in federal court. Isn't our circuit have a higher standard even with preponderance than some of the other circuits? Some of the other circuits don't even really use the word preponderance. I don't know if you can get lower than preponderance, but they don't seem to even require preponderance. They kind of go more with reasonableness, right? Well, I think that the word reasonable is used, but I believe that on my reading of the cases it still means more likely than not. And if the court glances at the 11th Circuit and other circuits, they do talk about this concern that you may not speculate, there may not be conjecture. In fact, they use the term stargazing, which is precisely what would be required here, because we have the initial notice of removal. We're not working on a clean slate here. And it says X number violation rate. Now we have 100% violation rate. So Judge Benchavingo was exactly right. What is the basis? There is no basis for this. It's merely looking at the complaint and asserting that pattern and practice means 100%, which it does not. But if she had looked at it and said, okay, these numbers are 100% for $12 million, but I think that just isn't reasonable, but even if I just do 50%, then it would still be $6 million. Would that be a different case if she had made that judgment? I think it would be a different case. I think that there was no evidence for her to arrive at a 50% violation rate, because, again, that's conjecture and speculation. So it's precisely what the district court should not be doing. The district court has to review the evidence before it. In this case, there was. Then you want them to do conjecture or speculation and say 20%. But how does that even come up with? I mean, would you concede that if, in fact, which you said you don't know at this point, if, in fact, no one ever got any, if they had a pattern or practice and they applied it in every single case, do you have any problem with the $12 million? Is the $12 million correct? I wouldn't agree with pattern and practice being 100%. But if they said 100%. If it can be read that way, do you have a problem with the $12 million? Is that improperly calculated? Based on the state of our pleadings. Based on the pleadings in this case, in the Ibarra case. Well, if you, if pattern and practice means everyone, that it happened with everyone, is the $12 million figure fairly correct regarding the 100%? No. I don't agree with pattern and practice. Hypothetical. If it does mean that, is $12 million a good number? If I had alleged the 100% violation rate in the complaint, yes. Okay, so you're not quarreling with the number of employees or the number of shifts or the average hourly rate of those things, per se. You're just saying you can't do it 100% of the time. Well, I'm relying on what they've represented. I've not been able to confirm or verify that this information is accurate. No, but it's a sworn declaration, so you're not challenging that piece of it. Yes, based on their representations. This is a California case with California workers, and I think if we look at what CAP is really all about, it's this balancing act, making certain that truly national litigation ends up in the federal forum. Does CAPA say that? It needs to be a national case, or does it say over 100 employees, $5 million, and diversity of one person? I think it's the policy behind CAPA, which is to make sure that litigation that has a tie to a more national scope ends up in federal court. This case alleges all causes of action arising from California law. California is like its own nation. I don't know that we live in California anymore. It should be in the California law. We're back to the Republic of California. I think counsel cited the case where there had been an allegation of 100% violation. Again, we don't allege that in this complaint. The allegation is common practice, and so there is no evidence here upon which the courts, the district courts on the bench in Vango could really rely and make the right decision. Now, it is their burden, okay, but just in terms of you're not prevented from putting something on in rebuttal, right? It's sort of like your Fifth Amendment right to remain silent. It is their burden. You can't change that particular burden, but you can put on rebuttal evidence of things that they put on in the removal hearing, correct? We can't, but there's no discovery. We don't even have a payroll record for our clients. No, but you could, for example, for your own clients say I worked for X number of years and this happened to me once a month or something like that that could form the basis of a challenge to their assumptions. Theoretically, you may not want to do that, but everybody's got some strategy going here. I mean, this is not about anything but strategy. It's the whole reason for removal. It's the whole reason for all these decisions that both sides have to make about presenting evidence in this context, but you could do that, right? Theoretically, yes, Your Honor. Okay. That's all I have. Thank you, counsel. Mr. Cochran, we'll give you a couple minutes for rebuttal. You've been asking a lot of questions. The Rae case, there was an allegation there of misclassification. The defendant assumed 100% misclassification. It could be that in many of these misclassification cases, it often turns on the mix of duties between exempt and non-exempt, and maybe 20% of the people work more than 50% of their time on exempt duties, and they were exempt, but the complaint didn't say 100% misclassification. It just said they had a misclassification practice. The defendant assumed 100% violation rate, and then they said, we require people to work five hours a week. We think they're all exempt. Five hours? Five hours. Oh, I was going to say five hours a week sounds like a good job. So, my point is there was some assumption in there that the class all suffered the violation. Here, the theory is not. If the theory was clear that the defendant denies people a second meal period when they work more than 10 hours, that's a fair limiting factor. If I then tried to put in all the shifts altogether, that wouldn't be meeting my propensity evidence. I would have to show the number of shifts that are more than 10 hours. Even then, if it said pattern or practice, I think I could go for all of them. Here, the only theory that's there, they make some mention in their complaint that they frequently were interrupted, and they have that there was off-the-clock allegations as well. So, if I go and pull up the records, and I see perfect meal periods on the records, it doesn't tell me anything, because it could be that people interrupted and they're just not clocking back in. I have to go with what they did. It's their power to decide what to do. All they have to do is, they have Mr. Ibarra, he's a mechanic in San Diego, he tells them the story of what happened to them, plead a complaint based on those allegations. But if you go big, and you say, everybody in the whole state of California, no limitations, well, then we meet our burden by counting up the number of people in the class, the number of qualifying shifts, and I think that's a fair interpretation. It balances, it wouldn't balance. You don't want a standard that nobody can meet. You don't want a standard that's met in cases that really aren't potentially legal. That's a good standard, and I think it's set by the district court. It's love to remand cases. Go shepherdize the standard plot of any of these cases. We will see remand after remand after remand by the district court. Setting other district court cases, remanded, on the same standards of, well, it's all guesswork. I think we need the night circuit, like we did in Cookshousen, and some of the other cases to provide this. Thank you, counsel. The case just argued is submitted, and once again, we're very appreciative of the arguments.
judges: Graber, Gould, Callahan